Filed 12/29/25  P. v. Jackson CA1/4
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br>    Plaintiff and Respondent,<br>v.<br>RAY ANTHONY JACKSON,<br>    Defendant and Appellant. | A169670<br><br>(Alameda County<br>Super. Ct. No. H44259B) |

Pursuant to Penal Code section 1172.75, the trial court recalled Ray Anthony Jackson's sentence and resentenced him.[1]  At the resentencing, the court struck an invalid prison-prior enhancement as well as a gang enhancement, and it reimposed the rest of Jackson's original sentence, including an upper term for voluntary manslaughter and an upper term for a firearm enhancement.  On appeal, Jackson challenges the court's authority to reimpose the upper term sentences based on factors in aggravation which Jackson had not admitted and had not been found true beyond a reasonable doubt by a jury.  We affirm.

---

[1] All further undesignated statutory references are to the Penal Code.

# I.  BACKGROUND

## A.  Procedural History

In 2011, Jackson pled no contest to voluntary manslaughter (§ 192), and he admitted that he personally used a firearm during the commission of the offense (§ 12022.5, subd. (a)), that the offense was committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)), and that he had a prior felony conviction for which he had received a term of imprisonment (§ 667.5, subd. (b)).  In another case, Jackson pled no contest to unlawfully possessing ammunition (former § 12316, subd. (b)(1)[2]).

The trial court sentenced Jackson to a total of 32 years in prison.  The sentence consisted of the upper term of 11 years for voluntary manslaughter, the upper term of 10 years for the firearm enhancement, 10 years for the gang enhancement, and one year for the prior prison term enhancement.  The court further sentenced Jackson to eight months for the unlawful possession of ammunition.

## B.  Resentencing

In 2023, Jackson filed a memorandum seeking to be resentenced under section 1172.75.  Specifically, he asked the trial court to strike the firearm enhancement and gang enhancement in the interests of justice.  In the alternative, he asked the court to impose a lesser sentence for the firearm enhancement.

Subsequently, the Alameda County District Attorney requested that the trial court recall Jackson's sentence and resentence him pursuant to section 1172.75.  The People agreed that the court should strike the gang

---

[2] In 2010, the Legislature enacted a comprehensive, non-substantive reorganization of deadly weapon statutes, which repealed section 12316, subdivision (b)(1) and enacted the substantively identical section 30305, subdivision (a)(1).  (Stats. 2010, ch. 711 §§ 4, 6.)

enhancement (as well as Jackson's invalid prison-prior enhancement under section 667.5, subdivision (b), as required by section 1172.75). The People did not express an opinion whether to strike the firearm enhancement, deferring to the "court's discretion."

At the resentencing hearing, the trial court stated it had "reviewed the probation report, the district attorney's office letter, the defendant's brief, the People's brief, [and] the transcript from the [original] sentencing" and considered the relevant resentencing law and factors. The court stated that "the only issue [was] the gun enhancement under [section] 12022.5." The court then turned to the nature and circumstances of the underlying crime and Jackson's post-conviction conduct. It described his disciplinary record as "not impressive" due in part to two recent infractions for violence. It noted that "the crime involved great violence and threat of bodily harm, et cetera" and that his criminal history reflected crimes "of increasing seriousness." The court found no circumstances in mitigation relating to the crime. Regarding circumstances relating to the defendant, the court acknowledged that the firearm enhancement could result in a sentence of over 20 years, but it noted that other mitigating circumstances were inapplicable because it was striking the other enhancements.

Defense counsel argued that Jackson's rehabilitative efforts reduced his risk for future violence. Counsel highlighted Jackson's family support and spiritual growth in prison. The court accepted counsel's oral presentation without objection but was unmoved.

Accordingly, the trial court struck the gang and prison-prior term enhancements and reimposed the upper term of 11 years for voluntary manslaughter and the upper term of 10 years for the firearm enhancement,

for a new total term of 21 years for the manslaughter conviction. Jackson appealed.

## II.    DISCUSSION

Jackson argues that the trial court erred by reimposing the upper terms for his voluntary manslaughter conviction and the associated firearm enhancement at his resentencing. Specifically, Jackson argues that section 1170, subdivision (b) and his constitutional right to a jury trial bars the court from reimposing the upper terms based on factors in aggravation which Jackson had not admitted and had not been found true beyond a reasonable doubt by a jury. We disagree.

### A.    Forfeiture

At the threshold, we observe that Jackson failed to challenge the trial court's authority to reimpose his upper term sentences at the resentencing hearing. In anticipation of forfeiture, Jackson maintains that his defense counsel's failure to object on this ground amounted to a denial of his right to effective assistance of counsel.

As discussed *post*, there is a split of authority on the merits issue, which is currently pending before the Supreme Court. (Compare *People v. Brannon-Thompson* (2024) 104 Cal.App.5th 455, 466–467 (*Brannon-Thompson*) [holding that the People were not required to prove aggravating factors beyond reasonable doubt at resentencing if defendant was originally sentenced to upper term]; *People v. Gonzalez* (2024) 107 Cal.App.5th 312, 329–330 [holding that trial court erred in re-imposing upper term based on factors not stipulated to by defendant nor proved beyond a reasonable doubt] (*Gonzalez*); see also *People v. Eaton*, 2025 Cal.App.Unpub. 1567 (Mar. 14, 2025, C096853) [nonpub. opn.], review granted May 14, 2025, S289903 [presenting the question over which *Brannon-Thompson* and *Gonzalez* split].)

4

The resolution to this live issue will inform whether competent counsel should have raised an objection to the reimposition of the upper term sentences at the resentencing hearing. Therefore, to forestall Jackson's ineffective assistance of counsel claim, we do not apply forfeiture. Instead, we exercise our discretion to consider the merits and therefore need not address Jackson's alternative claim for ineffective assistance of counsel. (*Gonzalez, supra,* 107 Cal.App.5th at pp. 326–327.)

## B.     Standard of Review

We review the trial court's sentencing decision for abuse of discretion and will not set it aside unless it is so irrational or arbitrary that no reasonable person could reach the same result. (See *People v. Carmony* (2004) 33 Cal.4th 367, 376–377.) However, we review legal issues, such as statutory or constitutional interpretation, de novo. (*California Advocates for Nursing Home Reform v. Smith* (2019) 38 Cal.App.5th 838, 864.)

When construing a statute, our fundamental task is to ascertain the Legislature's intent and effectuate the law's purpose. (*Stone v. Alameda Health System* (2024) 16 Cal.5th 1040, 1052.) To determine legislative intent, we principally look to the statute's actual words. (*Ibid.*) We scrutinize the words themselves, ascribing to them their plain and commonsense meaning, and we construe them in context of the entire statutory framework, harmonizing the various parts of the enactment. (*Ibid.*) If the statutory language is unambiguous, we need no clearer indication of intent and " ' "its plain meaning controls." ' " (*Ibid.*; *Even Zohar Construction & Remodeling, Inc. v. Bellaire Townhouses, LLC* (2015) 61 Cal.4th 830, 838 ["If the words themselves are not ambiguous, we presume the Legislature meant what it said, and the statute's plain meaning governs"].)

## C. The Trial Court Did Not Err in Reimposing the Upper Term

In 2021, our Legislature enacted Senate Bill No. 567 (2021–2022 Reg. Sess.), which amended section 1170, subdivision (b) to limit trial courts' discretion to impose upper term sentences. (Stats. 2021, ch. 731, § 1.3.) Specifically, a "court may impose a sentence exceeding the middle term *only when* there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term *and* the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170, subd. (b)(2), italics added.)[3] Otherwise, "[w]hen a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term . . . ." (*Id.,* subd. (b)(1).)

In the same session, our Legislature also enacted Senate Bill No. 483 (2021–2022 Reg. Sess.) which created a mechanism for providing retroactive relief to persons serving a term for a judgment that includes an enhancement under section 667.5, subdivision (b) that had since been eliminated.[4] (Stats. 2021, ch. 728, § 3; see former § 1171.1, renumbered § 1172.75 by Stats. 2022, ch. 58, § 12.)

Section 1172.75 requires the trial court to verify whether a judgment includes an invalid prior prison term enhancement and, if so, to "recall the

---

[3] The fact of a prior conviction, however, may be proved by way of a certified record of conviction without submitting the prior convictions to a jury. (§ 1170, subd. (b)(3).)

[4] Two years earlier, the Legislature eliminated sentence enhancements for prison priors unless the prior term was for a sexually violent offense. (Stats. 2019, ch. 590, § 1.)

sentence and resentence the defendant." (§ 1172.75, subd. (c).) The statute precludes the imposition of a longer sentence, instead requiring the resentencing to "result in a lesser sentence than the one originally imposed as a result of the elimination of the repealed enhancement, unless the court finds by clear and convincing evidence that imposing a lesser sentence would endanger public safety." (*Id.*, subd. (d)(1).) Moreover, during resentencing, "[t]he court shall apply the sentencing rules of the Judicial Council and apply any other changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing." (§ *Id.*, subd. (d)(2).)[5] Subdivision (d)(4) further provides: "*Unless the court originally imposed the upper term*, the court may not impose a sentence exceeding the middle term *unless* there are circumstances in aggravation that justify the imposition of a term of imprisonment exceeding the middle term, and those facts have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (*Id.*, subd. (d)(4), italics added.)

There is a split of authority whether the first clause in section 1172.75, subdivision (d)(4) (section 1172.75(d)(4)) specifies an exception to the heightened factfinding requirement for imposing upper term sentences (as articulated by the main clause of that subdivision and by section 1170, subdivision (b)) or whether section 1172.75(d)(4) merely restricts the scope of

_____

[5] Additionally, "[t]he court may consider postconviction factors, including, but not limited to, the disciplinary record and record of rehabilitation of the defendant while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the defendant's risk for future violence, and evidence that reflects that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice." (§ 1172.75, subd. (d)(3).)

7

defendants eligible to receive the upper term at resentencing to those who previously received the upper term.

In *Brannon-Thompson*, *supra*, 104 Cal.App.5th at pages 466–467, the Third District determined it was the former. There, the defendant alleged that his counsel rendered constitutionally deficient assistance by failing to object to the reimposition of an upper term sentence.[6] (*Id*. at p. 465.) Although there was no dispute that section 1170, subdivision (b) required aggravating factors be proven beyond a reasonable doubt before the upper term can be imposed, the court of appeal concluded there was "no sound legal basis for trial counsel to raise an objection to the trial court reimposing the upper term" "based on the plain language of section 1172.75." (*Brannon-Thompson*, at p. 466.) It explained: "Giving [section 1172.75(d)(4)'s] language its plain meaning, it is evident the Legislature intended the new burden of proof amendments to section 1170, subdivision (b) apply only if the trial court is imposing the upper term for the first time at a section 1172.75 resentencing. Section 1172.75, subdivision (d)(4) is, therefore, an exception to the general rule that the trial court must apply ameliorative changes in the law at a section 1172.75 resentencing." (*Id*. at pp. 466–467.)

The *Brannon-Thompson* court rejected the defendant's contention that section 1172.75(d)(4) should be read "as creating two requirements for imposing the upper term at resentencing: (1) the upper term must have been previously imposed *and* (2) the aggravating factors must be established beyond a reasonable doubt." (*Brannon-Thompson*, *supra*, 104 Cal.App.5th at p. 467.) The court emphasized that the statutory language was

---

[6] Like Jackson here, the defendant had failed to challenge the reimposition of an upper term sentence in the trial court, forfeiting the challenge on appeal. (*Brannon-Thompson*, *supra*, 104 Cal.App.5th at p. 464.)

"unambiguous" (*ibid.*), noting that "[i]f the Legislature intended section 1172.75, subdivision (d)(4) to create these two prerequisites to imposing the upper term at resentencing, it is up to the Legislature to correct the statute to reflect that is what it intended — not the courts." (*Brannon-Thompson*, at 467, fn. 3.)

In *Gonzalez*, *supra*, 107 Cal.App.5th at page 329, however, the Sixth District rejected *Brannon-Thompson*'s construction of section 1172.75(d)(4). While the majority opinion acknowledged that the provision's "plain language" supported *Brannon-Thompson*'s statutory interpretation, it found the dual requirement interpretation was "reasonable." (*Gonzalez*, at p. 329.) "Under [the dual requirement] interpretation, a defendant [who originally suffered an upper term sentence] would be eligible for the upper term but could not receive it in the absence of aggravating factors stipulated to by the defendant or proven beyond a reasonable doubt to the trier of fact." (*Ibid.*)

After determining there were two "reasonable" interpretations of the statute, *Gonzalez* determined the doctrine of constitutional avoidance compelled the dual requirement interpretation. (*Gonzalez*, *supra*, 107 Cal.App.5th at p. 330; cf. *id.* at p. 333 (conc. opn. of Bromberg, J.) ["I am skeptical whether, based solely on its text, Penal Code section 1172.75, subdivision (d)(4), is reasonably interpreted to restrict the class of defendants eligible for upper term sentences on resentencing under Penal Code section 1172.75. However, I agree with the majority that a contrary interpretation permitting imposition of upper term sentences without stipulation or proof beyond a reasonable doubt of aggravating factors would violate the Sixth Amendment . . . ."].)

Specifically, *Gonzalez* looked to *People v. Lynch* (2024) 16 Cal.5th 730 (*Lynch*), in which our Supreme Court "held that under the current version of

9

section 1170, subdivision (b), 'a Sixth Amendment violation occurs when the trial court relies on unproven aggravating facts to impose an upper term sentence, even if some other aggravating facts relied on have been properly established.' " (*Gonzalez*, *supra*, 107 Cal.App.5th at pp. 326–327.) In view of *Lynch*, *Gonzalez* held that "reading an exemption into section 1172.75, subdivision (d)(4) . . . and thereby allowing a court to resentence a defendant to an upper term sentence without proof beyond a reasonable doubt of aggravating factors, would run afoul of the Sixth Amendment implications identified in *Lynch*." (*Gonzalez*, at p. 330.)

More recently, Division 5 of this court adopted *Brannon-Thompson*'s interpretation of section 1172.75(d)(4) and disagreed with *Gonzalez*'s extension of *Lynch*. (*People v. Mathis* (2025) 111 Cal.App.5th 359, 373 (*Mathis*) review granted Aug. 13, 2025, S291628.) *Mathis* observed that our Legislature amended section 1170 in 2007 — fourteen years prior to the section's 2021 amendment — to grant trial courts " 'broad discretion' " to choose between the lower, middle, and upper terms. (*Mathis*, at p. 371, citing § 1170, former subd. (b), Stats. 2007, ch. 3, § 2 and *Lynch*, *supra*, 16 Cal.5th at pp. 747–748.) "That sentencing scheme, in effect when Mathis was originally sentenced, was one that ' "everyone agrees" ' raised no Sixth Amendment concerns." (*Mathis*, at p. 371, quoting *Lynch*, at p. 747.) "As a result, it was not necessary for the Legislature to impose the heightened factfinding requirements for defendants like Mathis who originally received upper term sentences under the prior version of section 1170, subdivision (b)." (*Mathis*, at p. 373.)

We agree with *Mathis*. The Sixth Amendment is not implicated where a trial court reimposes a sentence originally imposed pursuant to a

sentencing scheme that fully complied with the Sixth Amendment.[7]  The Legislature was free to limit the retroactive relief available to defendants under section 1172.75.  (*People v. Padilla* (2022) 13 Cal.5th 152, 162.)

In accord with most of our sister courts, we find the plain meaning of section 1172.75 to be clear:  It creates an exception to the heightened factfinding requirement for imposing upper term sentences.  (E.g., *Mathis*, *supra*, 111 Cal.App.5th at p. 374; *Brannon-Thompson*, *supra*, 104 Cal.App.5th at p. 466; *People v. Bravo* (2025) 107 Cal.App.5th 1144, 1159 ["the trial court was permitted to select upper terms . . . pursuant to section 1172.75(d)(4) because Bravo's original sentence included upper terms for those counts"]; cf. *Gonzalez*, *supra*, 107 Cal.App.5th at p. 333 (conc. opn. of Bromberg, J.).)  The opening clause — "[u]nless the court originally imposed the upper term" — states an exception from the rest of the provision, which supplies the general rule that an upper term may be imposed only if based on aggravating factors the defendant stipulates to or found true beyond a reasonable doubt by a fact finder.  (Merriam-Webster, Merriam-Webster.com Dict., <https://www.merriam-webster.com/dictionary/unless> (as of December 24, 2025) ["unless" means "except on the condition that[;] under any other

_____

[7] Jackson also states he had a right to a jury determination of aggravating factors under *Apprendi v. New Jersey* (2000) 530 U.S. 466, but he fails to supply cogent argument supported by legal analysis of that case, thus forfeiting the argument.  (*Doe v. Ledor* (2023) 97 Cal.App.5th 731, 748.)  In any event, *Apprendi* is inapposite.  There, the trial court *increased* the defendant's penalty for a crime *beyond the prescribed statutory maximum* based on a fact that it found true by a preponderance of the evidence.  (*Apprendi*, at pp. 470–471.)  Thus, the constitutional question was whether the sentence was permissible given that the judge's factual finding converted "what otherwise was a maximum 10-year sentence on that count into a minimum sentence."  (*Id.* at p. 474.)  Here, in contrast, the question is whether the trial court may reimpose certain terms of Jackson's original sentence during resentencing.

circumstances than" and "without the accompanying circumstance or condition that[;] but that"].)  We further agree with *Mathis* that section 1172.75(d)(4) — which "specifically deals with the new factfinding requirement" — controls over the more general subdivision (d)(2) of that section — which "addresses the general topic of changes in law." (*Mathis, supra,* 111 Cal.App.5th at p. 374.)  Thus, Jackson was not entitled to the benefit of section 1170, subdivision (b).

In sum, the trial court permissibly elected to retain the upper term sentence previously imposed under a constitutionally permissible sentencing scheme.

## D.     Jackson Fails to Show an Equal Protection Violation

Jackson also contends that our construction of section 1172.75(d)(4) violates his constitutional right to equal protection.  Specifically, he argues that defendants resentenced under section 1172.75, and who therefore are subject to the section 1172.75(d)(4) exception, are similarly situated to and treated differently than defendants whose unauthorized sentences are corrected and defendants who are resentenced pursuant to section 1170.18 or section 1172.1, to whom the section 1172.75(d)(4) exception does not apply.  He maintains that the disparate treatment of resentenced defendants presents an equal protection claim because "[t]he Legislature has arbitrarily chosen to make the sentencing procedure for defendants resentenced under section 1172.75 more difficult than for other defendants who are resentenced."  We disagree.

Where a class of criminal defendants is similarly situated to another class of defendants who are sentenced differently, courts look to determine whether there is a rational basis for the difference in treatment.  (*People v.*

12

*Hardin* (2024) 15 Cal.5th 834, 847 (*Hardin*).)[8] When the challenged statute does not involve a suspect classification or a fundamental right, we apply rational basis review. (*Ibid.*) "Under this deferential standard, we presume that a given statutory classification is valid 'until the challenger shows that no rational basis for the unequal treatment is reasonably conceivable.' [Citation.] The underlying rationale for a statutory classification need not have been 'ever actually articulated' by lawmakers, nor 'be empirically substantiated.' [Citation.] Evaluating potential justifications for disparate treatment, a court reviewing a statute under this standard must 'treat the statute's potential logic and assumptions far more permissively than with other standards of constitutional or regulatory review.' [Citation.] 'If a plausible basis exists for the disparity, courts may not second-guess its " 'wisdom, fairness, or logic.' " ' " (*Id.* at p. 852.)

---

[8] Historically, courts have analyzed equal protection claims with a two-part inquiry: " 'We first ask whether the state adopted a classification affecting two or more groups that are similarly situated in an unequal manner. [Citation.] If we deem the groups at issue similarly situated in all material respects, we consider whether the challenged classification' is adequately justified." (*Hardin, supra,* 15 Cal.5th at p. 848.) As our Supreme Court recently explained, however, the similarly situated test often serves no real purpose, particularly where the challenged statute facially distinguishes between identifiable groups. (*Id.* at p. 849.) In such circumstances, "courts no longer need to ask at the threshold whether the two groups are similarly situated for purposes of the law in question. The only pertinent inquiry is whether the challenged difference in treatment is adequately justified under the applicable standard of review. The burden is on the party challenging the law to show that it is not." (*Id.* at pp. 850–851.) Here, our reading of section 1172.75(d)(4) facially distinguishes defendants whose original sentence imposed uppers terms. Accordingly, we narrow our focus to whether there is a rational basis for the law's difference in treatment.

Given the purpose and operation of section 1172.75, a rational basis for the section's disparate treatment of defendants resentenced under that law whose original sentence imposed upper terms, is readily conceivable.[9]

The Legislature's "primary concern" in enacting section 1172.75 was "not merely with sentencing uniformity in the abstract." (*People v. Rhodius* (2025) 17 Cal.5th 1050, 1066 (*Rhodius*).) Rather, the Legislature's principal purpose was to align the treatment of defendants with prison-prior enhancements (other than for sexually violent offenses) imposed before 2020 — when such enhancements were valid — with the treatment of those sentenced after 2020 — when such enhancements were eliminated prospectively. (*Ibid.*; see Stats. 2019, ch. 590, § 1.) Section 1172.75 operationalizes that objective by applying "automatically and mandatorily" when a defendant's sentence includes an invalid prison-prior enhancement. (*People v. Dowdy* (2024) 107 Cal.App.5th 1, 11; § 1172.75, subd. (b), (c).)

By contrast, under section 1170.18, subdivision (a), defendants must file petitions to recall their sentence and receive a resentencing. Even then the section only applies to defendants serving sentences for convictions of certain former felonies for drug offenses that would be misdemeanors under current law. (§ 1170.18, subd. (a).) Section 1172.1 is even more targeted. It does not apply automatically to any specific convictions nor may a defendant petition for relief under the section; rather, the court may recall a defendant's sentence "on its own motion" or it may do so "upon the recommendation" of certain government officials. (§ 1172.1, subd. (a)(1).) Finally, while there is authority for the proposition that a court may be required to correct an

_____

[9] Jackson provides no legal authority for his assertion that section 1170, subdivision (b)(2), applies to resentencing hearings conducted under section 1170.18 "or because the original sentence was illegal." Nonetheless, for the purpose of this appeal, we assume without deciding that is the case.

14

unauthorized sentence during a resentencing, such circumstances are sui generis.[10] (E.g., *People v. Walker* (2021) 67 Cal.App.5th 198, 204–206 [holding that when a trial court corrects one part of a sentence on remand — and the scope of resentencing is entirely up to the trial court, there was no plea agreement, and defendant did not forfeit the issue — then the court is obligated to correct any component of the sentence that is legally incorrect].)

Given  section 1172.75's mechanical application to a wide set of defendants regardless of their underlying crime, it was reasonable for the Legislature to permit the trial courts, when resentencing a defendant under that section, to reimpose aspects of a defendant's original sentence without requiring heightened fact finding to prove aggravating circumstances.  In other words, the law's disparate treatment of certain classes of defendants serves the legitimate goal of judicial economy by avoiding retrials on aggravating factors already found true under a constitutionally valid sentencing scheme.[11]

The fact that the law fails to achieve uniformity of sentencing across all classes of defendants does not reflect arbitrary treatment for purposes of an equal protection claim.  "[A]*ny* retroactive sentencing remedy confined to a particular group of defendants will inevitably undermine uniformity in some ways — even as it promotes it in others."  (*Rhodius, supra,* 17 Cal.5th at

---

[10] Jackson does not cogently articulate a class of defendants whose unauthorized sentences may be corrected.  Instead, he appears to overstate the unauthorized sentence doctrine, which allows for appellate review of a " 'narrow' category of nonforfeitable error."  (*In re G.C.* (2020) 8 Cal.5th 1119, 1130.)  For the avoidance of doubt, while an unauthorized sentence may be remedied even after affirmance on appeal, to do so "the court must have jurisdiction over the judgement."  (*Ibid.*)

[11] To the extent that Jackson also challenges how, among defendants resentenced pursuant to section 1172.75, the law favors those whose original sentences did not impose upper terms, the same logic applies.

p. 1066.)  Because the challenged classification bears a reasonable relationship to a legitimate state purpose, Jackson's equal protection claim fails.

### III.   DISPOSITION

The judgment is affirmed.



MOORMAN, J.[*]



WE CONCUR:

STREETER, Acting P. J.
GOLDMAN, J.


*People v. Jackson*  (A169670)

---

[*] Judge of the Superior Court of Mendocino County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.